IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,

v.                                                        CASE NO. 1:05-cr-40-SPM -GRJ

YAIMA GONZALEZ,

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc. 525, a motion to vacate pursuant to 28 U.S.C. § 2255, filed by Yaima Gonzalez.  The motion stems from Defendant's jury-trial convictions for conspiring to manufacture, distribute, and possess with intent to manufacture and distribute more than 100 marijuana plants, in violation of 21 U.S.C §§  841(a)(1), (b)(1)(A)(vii), and 846, and manufacturing and possessing with intent to distribute more than 100 marijuana plants, in violation of 21 U.S.C § 841(a)(1), (b)(1(B)(vii) and 18 U.S.C § 2.  Defendant received concurrent mandatory-minimum sentences of 60 months' imprisonment.  Her conviction and sentences were affirmed on appeal.  Doc. 521.   The instant motion followed.  Upon due consideration, and for the following reasons, the undersigned recommends that the motion to vacate be denied.

## Background

In September 2005, DEA agents received information from a confidential informant regarding a marijuana grow house in Gilchrist County.  The DEA's investigation revealed that Defendant was the owner of the property.  Agents conducted a "knock and talk," and encountered Defendant and Eduardo Acosta.  The couple

agreed to cooperate and consented to a search of the property, which revealed marijuana plants and cash.  The investigation also tied Defendant to other grow houses and ultimately led to the seizure of more than 1000 marijuana plants.  Defendant and six co-defendants were named in a four-count indictment charging them with conspiracy to manufacture more than 1000 marijuana plants (Count 1) and manufacturing more than 100 marijuana plants (Counts 2-4).  Doc. 136 (superceding indictment).

In May 2006, Defendant pleaded guilty to the conspiracy count, pursuant to a plea agreement.  Docs. 248, 249.  She subsequently was permitted to withdraw her plea on the basis of her argument that at the time of the plea agreement she did not believe she would be held responsible for 1000 marijuana plants, because co-defendants had pleaded guilty to the same count and at sentencing the Government conceded that they were responsible for a lower amount and they were sentenced accordingly.  Defendant and her counsel also believed that the Government would file a substantial assistance motion pursuant to 18 U.S.C § 3553(e), but the Government obtained information suggesting that some of Defendant's statements regarding her knowledge of the scope of the conspiracy were not truthful and it became apparent that the Government would not file a motion on her behalf.  Doc. 416.  Further, the factual basis for the plea did not attribute more than 1000 plants to Defendant, and the Court concluded that Defendant should be permitted to challenge the facts that the Government believed made her accountable for an offense involving more than 1000 plants.  *Id*.  Defendant proceeded to trial on the four counts in the superceding indictment.

At trial, DEA Agent Wayne Andrews testified to statements and admissions that

Defendant made during the investigation.  Defendant walked the agents through the property and showed them the plants.  Defendant spoke with Andrews about the setup of the operation, the power diversions in place to provide electricity, and how long the operation had been active.  Defendant told Andrews about people who came from Miami to set up the operation, and stated that she became involved because a cattle business that she ran on the property had financial difficulties.  Andrews testified that he did not see evidence of a cattle operation on the property.  Defendant told Andrews about another grow operation in the area.

Co-defendants Roberto Valle and Lorenzo Valera testified to Defendant's involvement in marijuana grow houses.  Both men testified that they pleaded guilty to conspiracy to manufacture more than 1000 marijuana plants pursuant to plea agreements in which they agreed to cooperate and provide truthful statements to the Government.  In exchange for such cooperation, the men hoped the Government would file substantial-assistance motions and that they would be sentenced below the 10-year mandatory minimum.  Both men testified that they believed they could be punished further if they did not cooperate or tell the truth.

The jury found Defendant guilty of conspiring to manufacture more than 100 but less than 1000 marijuana plants, and of one count of manufacturing more than 100 marijuana plants.  The jury acquitted Defendant of the remaining two counts.

At sentencing, Defendant's counsel argued that Defendant qualified for sentencing below the mandatory minimum under the "safety valve" provision of 18 U.S.C. § 3553(f).  Counsel argued that a presentence report prepared following Defendant's guilty plea determined that Defendant qualified for the safety valve, but the

presentence report prepared following her trial included an increase in offense level for possession of a firearm and did not include a determination that Defendant qualified for sentencing under the safety valve.  Counsel argued that the difference amounted to punishment for Defendant having exercised her right to go to trial.  Counsel argued that Defendant was also entitled to an adjustment in the offense level for acceptance of responsibility.  R. 4 (sentencing transcript).

In response, the Government argued that the Defendant was not eligible for safety-valve sentencing because she did not fully and truthfully cooperate with the Government.  The Government contended that following her initial cooperation, Defendant attempted to minimize her involvement in the conspiracy, despite evidence that she persuaded her co-conspirators to set up grow operations in Alachua County and was actively involved in maintaining the operations.  *Id*.

 The Court asked the probation officer to comment on the inclusion of a safety-valve determination in Defendant's initial PSR, and the probation officer responded that the language in the initial PSR was included in error, and was corrected in an addendum to the PSR prior to Defendant's withdrawal of her guilty plea.  *Id*.   The Court overruled Defendant's objections to the upward adjustment for possession of a firearm, noting that a Glock .9 millimeter semiautomatic handgun had been found in or near Defendant's purse.  With respect to application of the safety-valve guidelines, U.S.S.G. § 5C1.2(a)(2), the Court found that Defendant had not shown by a preponderance of the evidence that she did not possess a firearm in connection with the offense.  The Court found that credit for acceptance of responsibility was not warranted because Defendant had maintained her factual innocence and put the Government to its burden

of proof at trial.  The Court explained that even if the objection were sustained, the

Court would still sentence Defendant to the mandatory minimum term.  *Id*.

On appeal, Defendant argued that her convictions should be overturned because

of the admission of Agent Andrews' testimony regarding her statements and because

the Government impermissibly vouched for the co-defendants' testimony when they

testified about their plea agreements.  Doc. 521.  Reviewing for plain error, the Eleventh

Circuit rejected Defendant's claims:

> Considering this record, including the testimony indicating her ownership, residence, possession of the marijuana plants and incriminating statements, we find no reversible error. Gonzalez argues that Andrews' testimony constituted hearsay, impermissible opinion testimony and violated the Confrontation Clause and the rules of evidence. She further argues that Andrews's conclusion regarding her knowledge of the conspiracy was an opinion and violated Fed. R. Evid. 704(b). Finally, she argues that the use of Andrews as a fact and opinion witness resulted in the jury giving undue weight to his testimony. The essence of Andrews's testimony established the background of the investigation's commencement and relayed what Gonzalez herself told him during questioning. It did not violate Fed. R. Evid. 704(b). As to the testimony from Roberto Valle and Lorenzo Valera, we find no reversible error in Gonzalez' claim that the government improperly elicited testimony concerning their plea agreements and sentencing reductions and improperly ensured the truthfulness of their testimony. Prosecutors are not prohibited from entering a plea agreement into evidence for the jury's consideration. *United States v. Castro*, 89 F.3d 1443, 1457 (11th Cir.1996). We have held that questioning regarding plea agreement requirements regarding truthfulness and the possibility of perjury charges to be proper. *Id*. Where a prosecutor questions witnesses regarding the truth-telling portions of their plea agreement or brings out the fact that the agreements stated they were subject to perjury penalties, the prosecutor is not vouching. *United States v. Cano*, 289 F.3d 1354, 1365-66 (11th Cir.2002). The government's questioning of Valle and Valera did not constitute impermissible vouching as questions pertaining to the requirement to be truthful and the penalties for perjury are permissible. We do dot find plain error. Moreover, having found no reversible error, there is no cumulative error.

The Court affirmed.  *Id*.

## **Motion to Vacate**

In the instant motion, Defendant contends that her conviction and sentence violated her constitutional rights because (1) the prosecutor impermissibly vouched for the testimony of her co-defendants, and her trial counsel provided ineffective assistance for failing to object; (2) Agent Andrews' testimony was constitutionally impermissible because it essentially required Defendant to testify against herself; (3) the Court erred by failing to consider sentencing Defendant under the "safety valve"; and (4) the Bureau of Prisons failed to place Defendant in a prison in Florida, contrary to the Court's recommendation.  Doc. 525.

## **Standard of Review**

A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded the court's jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). Further, disposition of a claim of error on direct appeal precludes further review in a subsequent collateral proceeding. *See, e.g., Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994).

Because Defendant's claims raise the issue of counsel's effectiveness, a brief review of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate.   To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  *Strickland*, 466 U.S. at 686.  The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong.  *Id*. at 697.  The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice.  *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).  To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  *Strickland*, 466 U.S. at 693.  Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.

### Discussion

**Claims (1) and (2): Co-Defendants' and Agent Andrews' Testimony**:

Defendant's claims regarding alleged prosecutorial vouching and the admissibility of Agent Andrews' testimony were raised and rejected on direct appeal. As set forth above, the Eleventh Circuit thoroughly analyzed Defendant's claims, and concluded that the admission of the evidence was not erroneous.   There is no basis for revisiting these claims on collateral review.  *See, e.g., Mills*, 36 F.3d at 1056.

Defendant contends that her trial counsel performed deficiently for not objecting to the co-defendants' testimony regarding their plea agreements.  The Eleventh

Circuit's opinion in this case makes it clear that such an objection would have been unsuccessful.  An attorney does not render ineffective assistance by failing to assert non-meritorious objections.  Further, a review of the trial transcript reflects that Defendant's counsel thoroughly cross-examined the co-defendants regarding their potential bias and the favorable sentencing treatment they might receive for testifying against Defendant, and Defendant's counsel moved the plea agreements into evidence for that reason.  Under these circumstances, Defendant has failed to demonstrate that counsel's performance was deficient or that she was prejudiced by counsel's failure to object to admission of the plea agreements.

Claim (3): **Safety Valve**

Petitioner contends that the Court erred by failing to consider sentencing her under the safety valve, but the sentencing transcript reflects that the issue was raised by Defendant's counsel and addressed by the Court at sentencing.  Defendant has shown no error in the Court's decision to impose the mandatory-minimum sentence.  To qualify for relief pursuant to the "safety valve" provision of 18 U.S.C. § 3553(f), the Court must find, *inter alia*, that "the Defendant did not . . . possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense[.]"  Because Defendant was found to possess a handgun, and did not meet her burden of showing by a preponderance of the evidence that she did not possess a firearm in connection with the offense, the safety valve was inapplicable.  *See* 18 U.S.C. § 3553(f), U.S.S.G. §5C1.2(a)(2).

Claim (4): **Place of Confinement**

At sentencing, the Court recommended that Defendant be confined in a facility

near the Dade County area.  Defendant argues that confinement in Danbury, Connecticut, exacerbated her punishment.  This claim presents no basis for collateral relief because decisions as to place of confinement are within the Bureau of Prison's discretion.  *See* 18 U.S.C. § 3621(b) (giving the BOP the authority and the discretion to designate a federal prisoner's place of confinement and providing that sentencing court recommendations are not binding on the BOP).

## Conclusion

In light of the foregoing, it is respectfully **RECOMMENDED:**

That the motion to vacate, Doc. 525, be **DENIED** and that a certificate of appealability be **DENIED.**

**IN CHAMBERS**  this 27th day of October 2011.


*s / Gary R. Jones*
GARY R. JONES
United States Magistrate Judge